Syllabus.

## MATTHEW FALOON *et al.*

### *v.*

## HANNAH SIMSHAUSER *et al.*

*Filed at Springfield October 31, 1889.*

1. LIMITATIONS—*adverse possession—so as to avail under the statute.* A possession of land, in order to be adverse, need not be under any muniment of title. Adverse possession is a possession inconsistent with the right of the true owner, and depends upon the intention with which it is taken and held; and an actual occupancy of land by one, accompanied by acts of ownership inconsistent with the fact of ownership in another, is presumptively adverse possession.

2. It is not essential to an adverse possession that there should be proof of oral declarations of claim of title made by the party in possession of land, but it is sufficient if it appear that he so acted as to clearly indicate that he did claim title.

3. SAME—*adverse possession—continuity in several—parol evidence.* A deed is not necessary to transfer the possession of land held adversely to the owner, and where land is held adversely by different occupants, and one succeeds to the possession of another, the identity and continuity of their possession, in order to make the period required to bar the owner, may be shown by parol evidence.

4. SAME—*bar of the statute—"a sword as well as a shield."* While the Statute of Limitations does not have the effect to transfer the title of the true owner, it does transfer his right to the possession to the party in adverse possession for the required period. When the bar has been completed, the owner can neither use his title for the purpose of a recovery nor as a defense, until he shall have destroyed the bar by purchase, limitation or otherwise.

5. Where both the right of entry and the right of action are lost by operation of the statute, the party in adverse possession is conclusively presumed to be the owner, and to be vested with the title, and such title can not be cut off and destroyed by the act of the holder of the former title in regaining possession by the commission of a tort, and, while so in tortious possession, conveying to a third party who has no notice of the adverse title, the holder of which has been wrongfully and temporarily dispossessed.

6. Where land has been held under a claim to the fee for the time prescribed by the Statute of Limitations, and an entry is made by a party who has the written title, such party may be dispossessed by an ejectment suit brought by him who has so held and claimed.

7. Conveyances—*description of grantees.* While it is necessary that all the grantees should be sufficiently described in a deed, yet that rule does not require such parties should be designated by the usual method of giving their names in full, and any other description will suffice which will distinguish them from all others, as, where one is described by his office, or by his relation to other persons.

8. So where a deed of land is made to a woman by her name, and "her children," she, and her children living at the time of the execution and delivery of the deed, will take as tenants in common, but a child born thereafter will take nothing. In the case of a grant of an immediate estate in possession, the grantee must be *in esse,* and a deed of that kind may be avoided by showing the grantee came into being subsequent to the delivery of the deed.

9. Practice in the Supreme Court—*reversal as to one of several plaintiffs in ejectment.* In ejectment by several plaintiffs, the findings and judgments in respect to the interests of the several plaintiffs are several and distinct, and if erroneous as to only one of the plaintiffs recovering, the entire judgment will not be reversed, but only that which is erroneous.

Appeal from the Circuit Court of McLean county; the Hon. Owen T. Reeves, Judge, presiding.

Mr. Thomas F. Tipton, *pro se,* and for the appellant Matthew Faloon:

The plaintiff in ejectment must recover on the strength of his own title, and not on the weakness of the defendant's.

The plaintiffs can not recover, for the reason that they failed to show a legal title in themselves at the commencement of the suit. *Pitkin* v. *Yaw,* 13 Ill. 251.

To make a disseizin effectual to give title under it to a second disseizor, it must appear that the latter holds the estate under the first disseizor, so that the disseizin of the one may be connected with that of the other. Separate disseizins do not aid one another. *Sawyer* v. *Kendall,* 10 Cush. 244; *Potts* v. *Gilbert,* 3 Wash. C. C. 479; *Ward* v. *Bartholomew,* 6 Pick. 409; *Allen* v. *Holton,* 20 id. 458; *Melvin* v. *Proprietors,* 5 Metc. 15.

The appellees claim by virtue of twenty years' possession, against Jesse Adams. Tipton claims by deed from Jesse

Adams to Faloon, and from Faloon to himself. That the claimed possession was not adverse to Adams, see *Ward* v. *Bartholomew*, 6 Pick. 409; *Allen* v. *Holton*, 20 id. 458; *Melvin* v. *Proprietors*, 5 Metc. 15; *Wade* v. *Lindsey*, 6 id. 407.

In *Melvin* v. *Proprietors, supra,* the court say: "For it is a principle well established, that when several persons enter on land in succession, the several possessions can not be taken so as to make a continuity of possession, unless there is a privity of estate. Whenever one acquires possession, the right of the true owner is restored, and the entry afterward by another disseizor constitutes a new disseizin." See, also, *Brant* v. *Ogden*, 1 Johns. 158; *Dow* v. *Campbell*, 10 id. 475; *Jackson* v. *Lomac*, 9 Cow. 658; *Allen* v. *Holton*, 20 Pick. 425.

In *Wade* v. *Lindsey*, 9 Metc. 407, it is held, "that where several persons, without privity of estate, successively enter on land as disseizins, their several possessions can not be tacked so as to make a continuity of disseizins." See, also, *San Francisco* v. *Fulde*, 37 Cal. 349; 2 Smith's Lead. Cases, (5th Am. ed.) 265; *Harland* v. *Brown*, 4 Ind. 143; *Johnson* v. *Nash*, 15 Texas, 422; *Doe* v. *Barnard*, 13 Q. B. 945; *Ward* v. *Bartholomew*, 6 Pick. 415.

In order to give title under the Statute of Limitations, the possession of the plaintiff can not be tacked to that of a former possession, under whom the plaintiff does not show title. *Schrack* v. *Zubler*, 34 Pa. St. 38; *Austin* v. *Railroad Co.* 45 Vt. 215; *Doswell* v. *DeLalansey*, 20 How. 32; Sedgwick's Wait on Trial of Title to Land, 738, 739; Tyler on Éjectment, 915; *King* v. *Smith*, 1 Rice, 10; *Mazick* v. *Nite*, 3 Brev. 151; *Mellies* v. *McAliby*, Cheevy, 200; *Simpson* v. *Downing*, 23 Wend. 316; 3 Washb. 145.

Where a party claims to have had adverse possession for twenty years, in order to avail of such possession he must show that he, and those under whom he claims, have had actual possession for twenty years. *Clark* v. *Lyon*, 45 Ill. 388; *Pfirshing* v. *Falsh*, 87 id. 260.

Adverse possession must be hostile in its inception, and must be clearly and positively proved. *Bryan* v. *East St. Louis,* 12 Bradw. 390; *Truesdale* v. *Ford,* 37 Ill. 210; *Keys* v. *Test,* 33 id. 316; *Strong* v. *Shea,* 83 id. 575.

When the apparent possession of land is consistent with the title appearing of record, it is not the duty of the purchaser to make any inquiry about the title beyond what the records show. *Smith* v. *Youle,* 31 Cal. 180.

Possession referred to record title: Wade on Notice, 297; *Plumer* v. *Robertson,* 6 S. & R. 179; *Palmer* v. *Bates,* 22 Minn. 532; *Great Falls Co.* v. *Worster,* 15 N. H. 412; *Woods* v. *Fassman,* 7 Watts, 382; *Cerpman* v. *Baccastow,* 84 Pa. St. 363; *Smith* v. *Youle,* 31 Cal. 180.

Messrs. WILLIAMS & CAPEN, for the appellees:

That the adverse possession of Withers and his grantees gives title that can be asserted in an action of ejectment, is familiar law. *McDuffee* v. *Sinnott,* 119 Ill. 449; *Jacobs* v. *Rice,* 33 id. 369; *Hubbard* v. *Kiddo,* 87 id. 578; *Riverside Co.* v. *Townshend,* 120 id. 9.

By the deed from Mrs. Withers, Hannah Simshauser and her children living at the time, took with her as tenants in common. 13 Shars. & Budd's L. C. 52; Coke on Littleton, 9 a; 2 Jarman on Wills, 224; *Wild's case,* 6 Coke, 27; *Parkman* v. *Bowdoin,* 1 Sumn. 366.

A deed is not necessary to transfer the possession of land held adversely to the owner. *Weber* v. *Anderson,* 73 Ill. 439; *Schneider* v. *Botsch,* 90 id. 577.

That twenty years' adverse possession gives a perfect title, see *Kerr* v. *Hitt,* 75 Ill. 51; *Hubbard* v. *Stearns,* 86 id. 35; *James* v. *Railroad Co.* 91 id. 554.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was ejectment, against the appellants, Matthew Faloon and Thomas F. Tipton. The premises in controversy were a

strip of ground, beginning at the south-west corner of lot 1, in White's addition to the town (now city) of Bloomington, and running thence north to the north line of said lot, thence west twenty-nine feet, thence south to the north line of Grove street, and thence east twenty-nine feet to the place of beginning. The appellant Tipton exhibited at the trial a title in himself, through *mesne* conveyance, from the government of the United States. The important matter in controversy is, whether his right of possession has been barred, in respect to the rights of appellees, by the operation of the Statute of Limitations, which tolls, after twenty years of adverse possession, the right of action for the recovery of lands, and the right to make an entry thereon.

Lot 6 in Gridley's addition to Bloomington lies west of lot 1 in White's addition to Bloomington, and this strip of ground now in question, twenty-nine feet wide, lies between them. In 1852, one Jesse Adams was in possession, under paramount title, of the east half of lot 6, of fifty-six feet off of the west side of lot 1, and of the strip of twenty-nine feet, and fenced all these pieces of land in one inclosure, and erected a brick house on the strip in dispute, that being about the center of the combined premises. He remained in possession until September 7, 1858, when he executed a deed to Allen Withers, in which the premises conveyed were described as the east half of lot 6, in Gridley's addition, and fifty-six feet off of the west side of lot 1, in White's addition, and put said Withers in possession of the house and of the whole of the premises. Withers retained possession of the entire enclosure, occupying it by his tenants, and claiming to be the owner of it all, until his death, in 1864. He left a will, by which he devised his whole estate to his wife, Sarah B. Withers. Mrs. Withers occupied the entire premises, by her tenants, she claiming to be the owner of the same, until August 8, 1871, when she conveyed, by deed, to "Hannah Simshauser and her children, * * * and their heirs and assigns." This deed also de-

scribed the premises conveyed, as the east half of lot 6, in Gridley's addition, and fifty-six feet off of the west side of lot 1, in White's addition. Mrs. Withers put her grantees into pos-. session. Mrs. Withers states in her testimony that the house and premises were occupied by a tenant when she made the deed; that she turned over the lease to Mrs. Simshauser; that the latter collected rent from the tenant therein; that Mrs. Simshauser rented the place for two or three years, until the house was torn down, and that the Simshauers then rented the land for a garden, or something of that kind; that Mr. Funk had a garden there and paid the taxes.

It seems, from the evidence, that the house having become somewhat dilapidated, Philip Simshauser, husband of Hannah Simshauser, had it torn down about 1874. The husband, in his testimony, in response to a question as to what his wife and children did with the house after Mrs. Withers deeded it to them, answered: "We had it about two years, and we had so much bother about tenants paying the rent, and it wanted fixing up, so after we looked it over I tore it down." He also states, that after the house was torn down his boys took the matter out of his hands, and had the premises rented out for a garden, and that nobody except them (the Simshausers) were in possession of or made any claim to the premises until the claim made by appellant Faloon, in 1885.

We think it evident from this testimony, that whatever possession Philip may have had, or authority he may have exercised in respect to the house and the land connected therewith, was merely in behalf of his wife and children, and in assertion of their claims of title, and in conformity with their relative interests as supposed to be fixed by the deed they held, and in no sense under claim of a personal and individual right in himself. It is also manifest that the consecutive possessions of the strip of ground twenty-nine feet wide, held by Mr. Withers, Mrs. Withers and the grantees in the conveyance of August 8, 1871, were supposed to be under and by

virtue of the deeds made by Adams and by Mrs. Withers, respectively.

Appellant Tipton's title is derived through a quitclaim deed for the twenty-nine feet, dated October 4, 1876, made by Jesse Adams to appellant Faloon, and a warranty deed from Faloon to himself, dated April 15, 1887. A possession of land, in order to be adverse, need not be under any muniment of title. Adverse possession is a possession inconsistent with the right of the true owner, and depends upon the intention with which it is taken and held; and an actual occupancy of land by one, accompanied by acts of ownership inconsistent with the fact of ownership in another, is presumptively adverse possession. The possession of Allen Withers and that of his devisee, Sarah B. Withers, were very plainly adverse, in respect to the twenty-nine feet, to the title of Jesse Adams, under which appellants claim, and these possessions continued from September 7, 1858, to August 8, 1871, a period of twelve years and eleven months. So, also, the possession of appellees, under their deed from Mrs. Withers, was manifestly adverse to the title of which appellants seek to avail themselves, and it extended from August 8, 1871, until some time in the year 1885, a period of almost or quite fourteen years. It is not essential there should be proof of oral declarations of claim of title made by appellees, but it is sufficient if it appears they so acted as to clearly indicate that they did claim title. (*James* v. *Indianapolis and St. Louis Railroad Co.* 91 Ill. 554.) It follows, that if these possessions can be tacked together, there is an adverse possession shown in this case of some twenty-seven years, and the bar of the statute against the title of appellants, even though it be the true title, is complete, and became absolute in September, 1878.

Appellants urge, however, that where several persons, without privity of estate, successively enter on land as disseizins, their several possessions can not be tacked so as to make a continuity of disseizins, and that in order to give a right to

.the bar under the Statute of Limitations, a party seeking to avail of such right must show privity of estate with the prior disseizors by purchase and conveyance of disseizin.   It is a ·sufficient answer to this claim, and to the authorities cited, to show it is essential to establish by a deed that appellees are connected with the adverse possessions of Allen and Sarah B. Withers, to say that the question is not an open one in this State, and that, the rule having been years ago determined otherwise by this court, and it being a rule of property upon which many titles may depend, such former ruling will be adhered to without any re-examination of the conflicting authorities in respect thereto. · In *Weber* v. *Anderson,* 73 Ill. 439, it was held, that a deed is not necessary to transfer the possession of land held adversely to the owner, and that where land is held adversely by different occupants, and one succeeds to the possession of another, the identity and continuity of their possession, in order to make the period required to bar the owner, may be shown by parol evidence.   See, also, *Schneider* v. *Botsch,* 90 Ill. 577, and other cases there cited.

Appellant Tipton further insists he is an innocent purchaser for value from a person in possession having the legal title of record, and should be protected as such.   Waiving the contention made by appellees, that this claim is wholly unsustained by the facts, it would seem that even if it has a sufficient basis in the evidence, yet it can not here prevail.   While the Statute of Limitations does not have the effect to transfer the title of the true owner, it does transfer his right of possession to the party in adverse possession for the required period.   In *Hinchman* v. *Whetstone,* 23 Ill. 185, this court said:   "Where the statute has tolled both the right of entry and the right of action, the remedy of the owner is gone, and he is precluded from asserting his right or setting up his title against the party relying upon the statutory bar."   And further said:   "As against such occupant and those claiming under him he can neither use his title for the purpose of recovery or defense until

he shall have destroyed the bar, by purchase, limitation, or some other mode equally effectual."

When both the right of entry and the right of action are lost, then, by operation of the statute, the party in adverse possession is conclusively presumed to be the owner, and to be vested with title, and such title can not be cut off and destroyed by the act of the holder of the former title in regaining possession by the commission of a tort, and, while so in tortious possession, conveying to a third party who has no notice of the adverse title, the holder of which has been wrongfully and temporarily dispossessed. The right of possession which once was in the former owner having been transferred by the statute to the new and adverse owner, such former owner is powerless to convey to the purchaser from him a right of possession which he himself does not have. The appellant Faloon took possession after the rendition of judgment in the first ejectment suit, hereafter mentioned, but he was not put in possession by any writ of possession issued upon such judgment. In *Riverside Co.* v. *Townshend,* 120 Ill. 9, this court held, that when a plaintiff in ejectment shows an adverse possession for twenty years, so that the entry is barred, he is entitled to recover, even against a defendant whose possession for a less period is lawful, and quoted with approval the language from Angell on Limitations, (sec. 381,) that "it is also unquestionable, that where land has been held, under a claim to the fee, for the time prescribed by the statute, and an entry is made by a party who has the written title, such party may be dispossessed by an ejectment brought by him who has so held and claimed."

The declaration filed in this case contains ten counts. In the first count, Hannah Simshauser, Philip Simshauser, Allen W. Simshauser, Lawrence Simshauser, Benjamin F. Simshauser, Peter P. Simshauser, Mary Belle Simshauser, Sarah W. Simshauser and Henrietta Simshauser claim the whole of the premises in fee. In the second count, Hannah Simshauser

claims an undivided one-eighth part of said premises, and in the third, fourth, fifth, sixth, seventh, eighth, ninth and tenth counts, respectively, Allen W., Lawrence, Benjamin F., Peter P., Mary Belle, Sarah W., Henrietta and Clarence Simshauser, each, respectively, claims an undivided one-eighth part of said premises. It seems, from the evidence, that in 1885 the appellant Faloon commenced ejectment for the recovery of the premises in dispute, against one Funk, who had rented them from Benjamin F. Simshauser, and said Funk gave due notice to said Benjamin F. of the suit, and in the suit Faloon obtained judgment by default. In the present suit, which was tried before the court without a jury, the court held that Benjamin F. Simshauser was barred by the judgment in the first ejectment, and as to him the judgment was, that he take nothing by the suit. But the court found the issues for the plaintiffs, Hannah, Allen W., Lawrence, Peter P., Mary Belle, Sarah W. and Clarence Simshauser, and that each of said last named plaintiffs was the owner, in fee simple, of an undivided one-eighth part of the premises, and rendered judgment that each of them "do each severally recover  *  *  *  an undivided one-eighth of the above described premises," etc.

It is strenuously urged, the judgment in favor of Clarence Simshauser for an undivided one-eighth of the land is erroneous, and such contention is undoubtedly well founded. The deed from Mrs. Withers was, as we have heretofore seen, to Hannah Simshauser and her children. While it is necessary that all the grantees should be sufficiently described in a deed, yet that rule does not require such parties should be designated by the usual method of giving their names in full, and any other description will suffice which distinguishes them from all others, as, where one is described by his office or by his relation to other persons. (5 Am. and Eng. Ency. of Law, p. 432, and authorities cited in notes; *Cook* v. *Sinnamon*, 47 Ill. 214; *Low* v. *Graff*, 80 id. 360.) In this case, Mrs. Withers, and her children living at the time the deed was executed and delivered,

took as tenants in common. (*Wild's case*, 6 Coke, 17 ; *Parkman* v. *Bowdoin*, 1 Sumn. 366 ; 2 Jarman on Wills, 224.) The evidence of Philip Simshauser shows that the seven children of himself and wife, living at the time Mrs. Withers made the deed, were Allen W., Lawrence, Peter P., Mary Belle, Sarah W., Henrietta and Benjamin F. The evidence of Mrs. Withers is to the same effect, and it clearly appears from her testimony that Clarence was born about three years thereafter. Of course, Clarence did not take by the deed. In case of a grant of an immediate estate in possession, the grantee must be *in esse*, and a deed of that kind may be avoided by showing the grantee came into being subsequent to the delivery of the deed. (*Hulick* v. *Scovil*, 4 Gilm. 159 ; *Miller* v. *Chittenden*, 2 Iowa, 368 ; Tiedeman on Real Prop. sec. 797.) The finding and judgment of the court in favor of Clarence Simshauser, for an undivided one-eighth part of the premises, was clearly erroneous.

Section 27 of the Ejectment act (Rev. Stat. 1874, chap. 45, sec. 27,) provides : "It shall not be an objection to a recovery, in any action of ejectment, that any one of several plaintiffs does not prove any interest in the premises claimed, but those entitled shall have judgment, according to their rights, for the whole or such part or portion as he or they might have recovered if he or they had sued in his or their name or names, only." And it is provided in the second and sixth clauses of section 30 of the same act, that if it appears that one or more of the plaintiffs have a right to the possession, and that one or more have not such right, the verdict shall specify for which plaintiff the jury find, and as to which plaintiff they find for the defendant ; and that if the verdict be for an undivided share or interest in the premises claimed, it shall specify such share or interest. In this case, there is no cross-error assigned by Henrietta Simshauser, because there was no finding and judgment in her favor for an undivided one-eighth of the land. It is not perceived that there is any occasion for reversing the entire judgment, and remanding the cause. The findings and

judgments in respect to the interests of the several appellees were several and distinct. The judgment in favor of Clarence Simshauser being erroneous, and he having no right or title in the premises, is reversed. The judgments in favor of Hannah Simshauser, Allen W. Simshauser, Lawrence Simshauser, Peter P. Simshauser, Mary Belle Simshauser and Sarah W. Simshauser, are affirmed.

It is ordered that six-sevenths of the costs of this appeal be taxed to appellants, and one-seventh of such costs be taxed to Clarence Simshauser.

*Judgment reversed in part and in part affirmed.*