## JOHN W. RICHARDS

*v.*

## LUTHER CARTER *et al.*

*Opinion filed February 18, 1903.*

1. LIMITATIONS—*statute begins to run when payment becomes due.* As soon as the purchase money on land becomes due the Statute of Limitations begins to run against the debt, and the seller's right of entry is complete as soon as the purchaser defaults.

2. SAME—*payment presumed after twenty years unless presumption is rebutted.* Payment of the purchase price for land is presumed after twenty years unless. the presumption is rebutted by payment of interest, a promise to pay or an acknowledgment of the debt in such manner as to prevent a bar of the statute.

3. SAME—*when title is good under section 6 of the Limitation act.* One in possession of land under claim and color of title, made in good faith, for seven successive years, and who pays the taxes during such period, has a good title, under section 6 of the Limitation act, to the extent and purport of the paper title under which he claims.

4. SAME—*there may be good faith notwithstanding notice of adverse claims.* Good faith in acquiring color of title may exist notwithstanding actual notice of claims or legal defects which prevent the title from being absolute.

5. SAME—*bad faith of grantor's ancestor cannot be imputed to innocent purchasers.* Alleged bad faith by grantor's ancestor in acquiring color of title cannot be imputed to the grantees unless they purchased with actual notice thereof.

APPEAL from the Circuit Court of Jasper county; the Hon. S. L. DWIGHT, Judge, presiding.

This is an action of ejectment brought by the plaintiff, against the defendants, in the Jasper county circuit court, to recover the possession of the south-west quarter of the north-east quarter of section 31, township 6, north, range 9, east of the third principal meridian. The defendants claimed title under sections 1 and 6 of "An act in regard to limitations." (Hurd's Stat. 1899, p. 1117.) A jury was waived and a trial had before the court, which resulted in a finding and judgment in favor of the defendants, and the plaintiff has prosecuted an appeal to this court.

It appears from the evidence that David Richards entered said premises from the United States on the 5th day of July, 1852; that in 1853 he sold the same to James Barnes, Sr., for the sum of $150, taking his promissory note therefor, payable one year after date, and executed to Barnes a contract for a deed, by which it was agreed that he would convey said premises to Barnes upon the payment of said promissory note; that Barnes took possession of said premises under the contract and remained in possession thereof until the time of his death, intestate, in 1865; that he left him surviving his widow, Fanny Barnes, and three children, George, James and Elizabeth; that the premises were sold for the taxes of 1865 to James Honey in June, 1866, and he received a tax deed therefor in December, 1868; that James Barnes, Jr., purchased said tax title, prior to 1870, from James Honey and went into possession of the premises; that he received a deed for the premises from said James Honey on September 13, 1881; that George Barnes, in about 1871, removed to the State of Texas, and Fanny, the mother, and Elizabeth, the sister, resided with James Barnes, Jr., upon the premises until their death, which occurred, respectively, in about the years 1870 and 1871; that James Barnes, Jr., remained in possession of the premises until the time of his death, intestate, in 1891; that he left him surviving his widow and one child, Edisa Barnes, now Edisa Lambird; that the widow, with her daughter, Edisa, and her two sons by a former marriage, George and Silas Grove, remained upon the premises until shortly before this suit was commenced, when the land was rented to the defendant Luther Carter. The widow died in 1901, and Edisa, prior to the commencement of the suit, had conveyed to the defendant George Grove, her half-brother, the north two-thirds of said premises, and to Silas Grove, her half-brother, the south one-third thereof.

It appears from the affidavit of the plaintiff filed in support of a motion for a continuance, which was admit-

ted in lieu of the testimony of the witness, that if David Richards were present he would testify that he removed from Illinois to the State of Missouri in 1867, where he had since resided; that no part of the purchase money of said premises had been paid, and that the promissory note given therefor by James Barnes, Sr., was in his possession. The record is entirely barren of any evidence showing a demand, suit or other attempt by David Richards or the plaintiff to collect the said note from James Barnes, Sr., or his widow or heirs, or to regain possession of the land, until subsequent to the fall of 1900, when George Grove, having purchased a part of said premises, sought to obtain a deed from David Richards to supply a link in his chain of title made by what he supposed was a lost deed from David Richards to James Barnes, Sr., whereupon David Richards claimed he had not been paid the purchase money for the premises and conveyed the same to the plaintiff, his son, who, after making demand for possession, commenced this suit on May 21, 1901.

R. C. HARRAH, and S. F. GILMORE, for appellant.

GIBSON & JOHNSON, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended that all rights of David Richards or the plaintiff, his grantee in said premises, are barred by the twenty year Statute of Limitations. (Hurd's Stat. 1899, p. 1117.) Section 1 of the Limitation act reads, in part, as follows: "No person shall commence an action for the recovery of lands, nor make any entry thereon, unless within twenty years after the right to bring such action or make such entry first accrued." And paragraph 5 of section 2 reads: "In all cases not otherwise specially provided for, the right [of entry] shall be deemed to have accrued when the claimant, or the person under whom he claims, first became entitled to the possession

of the premises under the title upon which the entry or the action is founded."

There is no evidence that any payment was ever made on said purchase money, or promise to pay the same, which would stop the running of the statute, and no recognition of the rights of David Richards by James Barnes, Sr., or any other person or persons, subsequent to the purchase by James Barnes, Sr., and no attempt to collect the purchase money or acquire possession of the land until the commencement of this suit by plaintiff. So soon as the purchase money became due the statute commenced to run against the debt, and continued to run until it was barred. The right of entry of David Richards was complete so soon as James Barnes, Sr., made default in the payment of the purchase money, and if David Richards failed to commence an action for the recovery of said premises or to make entry thereon within twenty years from the date of such default, his right to bring an action to recover said premises or make an entry thereon, by the express language of the statute, was barred, and he could not afterwards maintain such action or make such entry, and the action or right of entry being barred as to him would be barred as to the plaintiff, who is his grantee. "Where possession is taken under an agreement to purchase, when the purchaser performs all his obligations such possession becomes adverse and * * * relates back to the entry under such agreement." (*Schneider* v. *Botsch*, 90 Ill. 577; *Davis* v. *Howard*, 172 id. 340.) And payment will be presumed after twenty years unless the presumption is rebutted by payment of interest, a promise to pay, or an acknowledgment of the debt in such manner as to save the bar of the statute. *Locke* v. *Caldwell*, 91 Ill. 417.

What has been said thus far is based upon the theory that James Barnes, Jr., took possession of and continued to occupy the premises in question as heir-at-law of James Barnes, Sr., deceased, under the contract with

David Richards, after his father's death. The evidence, however, tended to show, and the court was justified from the evidence in finding, that such was not the fact, but that James Barnes, Jr., entered into the possession of the premises, not as heir-at-law, but as purchaser from James Honey, and that he afterwards received a deed therefor from Honey and continued to occupy the premises, claiming title thereto under said deed, up till the time of his death. The tax deed to Honey and the quitclaim deed from Honey to James Barnes, Jr., each purported, upon its face, to convey the fee, and was color of title. That James Barnes, Jr., occupied the premises and paid all the taxes assessed thereon from 1881 to 1891 is not questioned. If he was in possession of the premises under claim and color of title made in good faith for the period of seven successive years, and during that time paid all taxes legally assessed on the premises, he had a good title thereto according to the extent and purport of the paper title received by him from Honey, under section 6 of the Limitation act. It is said, however, he cannot be held to have occupied the premises under said paper title in good faith, as it was his duty, as heir, to pay the taxes, and that having failed to pay them and suffered the land to be sold, his purchase from Honey amounted to no more than a redemption from such sale. Such would, perhaps, be true if he held as heir of James Barnes, Sr., deceased, but not if he held in his own right and under color of title from Honey. We have held there is good faith when there is no fraud, and that there may be good faith notwithstanding actual notice of claims or legal defects which prevent the title, of which there is color, from being absolute. (*Keppel* v. *Dreier*, 187 Ill. 298.) In any event, the title to the premises now held by George and Silas Grove was acquired from the only heir of James Barnes, Jr., deceased, who inherited from her father all title therein which he had, and there is nothing in the record to impeach their good faith, and the

bad faith, if any, of James Barnes, Jr., cannot be imputed to them unless they purchased with notice thereof. *Lewis* v. *Pleasants*, 143 Ill. 271.

We are of the opinion the trial court properly ruled in holding that plaintiff had failed to show title in himself, and in rendering judgment in favor of defendants.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*